UNITED STATES of America, Appellee,

v.

Richard C. HISCOTT, Appellant.

No. 78–1535.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1978.

Decided Nov. 15, 1978.

John W. Frankum of Jones, McDaniel &
Frankum, Kansas City, Mo., for appellant;
Gregory O. Grounds, Kansas City, Mo., on
the brief.

Cynthia A. Clark, Asst. U. S. Atty., Kansas City, Mo., for appellee; Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., on the brief.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

In June, 1978 Richard C. Hiscott, hereinafter "defendant," was found guilty by a jury in the Western District of Missouri of having violated 18 U.S.C. § 2313, which is one of the sections of the National Motor Vehicle Theft (Dyer) Act as now written and codified.[1]  On July 6, 1978 the trial judge sentenced the defendant to imprisonment for a period of two years, subject to the provisions of 18 U.S.C. § 4205(b)(2). The defendant filed a timely notice of appeal and has been permitted to remain at large on bail pending appeal.

For reversal the defendant contends that the evidence was insufficient to sustain the verdict; that the district court erred in permitting the jury to see and hear unexpurgated video tapes which came into the record as Government's Exhibit 12; that the district court erred when it permitted the jury again to see and hear Government's Exhibit 12 in the course of the jury's deliberations; and that the district court erred in failing to instruct the jury as to one of the essential elements of the particular offense charged.

The one count indictment returned by the grand jury charged that:

On or about September 2, 1977, RICHARD C. HISCOTT wilfully and knowingly sold a stolen motor vehicle, that is, a 1977 Chevrolet van, which was a part of and constituted interstate commerce between the State of Arizona and Kansas City in the Western District of Missouri, and he then knew the motor vehicle to have been stolen; all in violation of Sections 2 and 2313 of Title 18, United States Code.

The record reflects that prior to the date of the offense alleged in the indictment agents of the Bureau of Alcohol, Tobacco and Firearms of the United States Treasury Department (a law enforcement agency) acting in cooperation with the Kansas City Police Department set up a "sting" operation known as "A. Picaro & Associates," and caused the word to be spread that the operation was a criminal one, and that it was in the business of "fencing" stolen property, including, but not limited to, stolen motor vehicles.

It is undisputed that on September 1, 1977 the defendant, Hiscott, appeared at the establishment just mentioned and engaged in a conversation with Special Agent John Keating and with Al Murrie (or Murie) who was working with the officers as a confidential informer.  A video tape was made of this conversation.  It is also undisputed that on September 2, 1977 defendant appeared at the establishment a second time and had a conversation with Special Agent Keating and with Murrie.  Another Special Agent, Petersen, was present during the conversation.  Defendant naturally did not know that Keating and Petersen were law enforcement agents and did not know that Murrie was working with them as an informer.  The second conversation, like the first, was recorded on video tape. Following that conversation the defendant sold the van to "A. Picaro & Associates" for $750.00.  He was not in a position to deliver a title certificate covering the vehicle and was not required to do so.

Defendant testified in his own behalf. He stated that he purchased the van in good faith for $3500.00 and advanced $600.00 to the seller to enable him to travel to California, obtain the title certificate and return, at which time the balance of $2900.00 would be paid.  The seller and his companions never reappeared.  The testimony of defendant, if believed, would indi-

1. Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

cate that he dealt with the vehicle in absolute good faith and without knowledge that it had been stolen. However, his version of his initial dealings with the van was involved and unrealistic; his direct testimony was severely shaken in the course of the vigorous cross-examination conducted by government counsel. The jury was not required to believe the defendant and evidently did not do so.[2]

The tapes that have been mentioned contained a good deal of foul "street language" and also contained statements by the defendant that at least suggested that he habitually dealt in stolen property.

There were two jury trials of the case presided over by different district judges. The first trial resulted in a hung jury; the second trial resulted in the conviction of the defendant.

Prior to the first trial, certain portions of the tapes were deleted, and the jury heard the tapes as expurgated. When the problem arose prior to the commencement of the second trial, the second trial judge viewed and listened to the tapes and declined to delete any part of them. Thus, the second jury was permitted to see and hear the unexpurgated tapes, and then to see and hear them again during the jury's deliberation.

At the conclusion of the government's evidence counsel for the defendant moved for a judgment of acquittal. He contended, first, that there was no substantial evidence that the defendant was aware at any relevant time of the stolen nature of the vehicle. Counsel contended further that there was no substantial evidence that when the vehicle was sold to those in charge of the "sting" operation it was still "a part of and

constituted" interstate commerce between Arizona and Missouri, as charged in the indictment. The motion was overruled.

The defendant then put on his case which included his own testimony. At the conclusion of all of the evidence defense counsel renewed the motion for a judgment of acquittal, and again urged that the evidence failed to show a necessary connection between the stolen van and interstate commerce at the time of its sale.

At that stage of the trial the contention just mentioned clearly gave the trial judge some trouble. However, the judge overruled the motion.[3]

The record does not reflect that the trial judge held an instruction conference as is frequently done, or that the judge specifically invited counsel to submit requests for instructions. See Fed.R.Crim.P. 30.

The case was argued, and the jury was then instructed. The instructions purported to set out the essential elements of the offense charged.

The jury was told that it was incumbent on the government to prove beyond a reasonable doubt: first, that the van was in fact stolen; second, that after the theft and before the sale the van had been moved from one state to another; third, that the defendant wilfully sold or disposed of the vehicle "*after it had been moved in interstate commerce*" (emphasis added); fourth, that the defendant knew that the vehicle was stolen.

After the instructions had been read to the jury, counsel were given an opportunity to object to them, and defense counsel did object to the failure of the trial judge to instruct the jury that at the crucial time

---

2. According to his testimony, defendant on occasions buys and resells used motor vehicles. However, basically he is not a used car dealer; what he does primarily is to purchase wrecked or useless vehicles and then salvage and resell usable parts. At times when people offer to sell him articles of merchandise or property that he does not care to buy, he will refer the would-be sellers to other second hand dealers from whom defendant receives "referral fees" if the property is sold to the dealers to whom the sellers have been referred.

3. The judge stated that if the defendant should be convicted, the court would call for briefs on the question that had been raised by counsel for the defense. However, it does not appear that the defendant filed any post-conviction motion for relief, and the trial judge did not call for any post-trial brief. The defendant was not required to file any post-conviction motion, and his failure to do so did not constitute a waiver of the contention in question.

the van must still have been a part of or constituted interstate commerce. The judge again expressed his concern about the matter but did not change his instructions.

■ Taking up, first, the question of the initial admission into evidence of the unexpurgated version of the video tapes, we think that the matter rested within the discretion of the trial judge, and that in declining to delete portions of the tapes the judge did not abuse his discretion. That assignment of error is rejected. We pass over for a moment the claim of the defendant that the trial judge erred when he permitted the jury to see and hear the tapes a second time in the course of the deliberations.

The contention that there was insufficient evidence to sustain the verdict, and the contention that the trial court erred in failing to instruct on an essential element of the offense are very closely related to each other, and we will consider them together.

■ In passing on the sufficiency of the evidence we are required to view the evidence in the light most favorable to the government and to give to the government the benefit of all inferences favorable to it that are reasonably to be drawn from the evidence.

■ When that approach is taken, we are satisfied that the jury was justified in finding that when the defendant acquired the van and when he disposed of it later, he knew that it was a stolen vehicle and knew that it had been transported in interstate commerce from Tucson, Arizona to Kansas City, Missouri.[4] That conclusion, however, does not solve our problem.

■■ It was an essential element of the offense charged under § 2313 that at the time of the offense the vehicle be in what may be called the "stream of interstate or foreign commerce." If a stolen vehicle has

finally "come to rest" in a particular state, future dealings with it by an individual do not constitute a violation of § 2313 even though the individual may be aware of the fact that the vehicle had been stolen. However, a departure from the "stream of commerce" is not necessarily established by the fact that after being stolen in one state and transported into another state, the vehicle remains in the latter state for a substantial period of time. And ordinarily the question of whether the vehicle was still in the stream of interstate commerce when the defendant dealt with it is one of fact for the jury. See *United States v. Baker*, 452 F.2d 21, 24 (5th Cir. 1971), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1195, 31 L.Ed.2d 248 (1972); *United States v. Wyatt*, 437 F.2d 1168, 1172 (7th Cir. 1971); *United States v. Briddle*, 430 F.2d 1335, 1338 (8th Cir. 1970); *United States v. Brady*, 425 F.2d 309, 311 (8th Cir. 1970); *Powell v. United States*, 410 F.2d 710, 712 (5th Cir. 1969); *Babb v. United States*, 351 F.2d 863, 865 (8th Cir. 1961).

■ Each of the acts prohibited by § 2313 is a separate offense. *United States v. Powell*, 420 F.2d 949, 950 (6th Cir. 1970); *Weaver v. United States*, 374 F.2d 878, 880 (5th Cir. 1967). In the instant case, while the grand jury might have charged the defendant with an unlawful receipt of the stolen van or with both the unlawful receipt of it and the unlawful sale of it, the indictment charges an unlawful sale only, and, as has been seen, it was alleged that at the time of the sale the vehicle was a part of and constituted interstate commerce.

We think that there is little doubt that when the defendant purchased the van from the seller who has been mentioned, the vehicle was still a part of and constituted interstate commerce. See *Brooks v. United States*, 267 U.S. 432, 439, 45 S.Ct. 345, 69 L.Ed. 699 (1925), which defined and limited the constitutional power of the federal government to deal with the problem

---

4. Prior to the trial the parties stipulated that the vehicle had been stolen from the lot of O'Reilly Motor Co. in Tucson, and had been transported to Kansas City. It was agreed that the theft occurred on or after August 9, 1977

and that it was not reported to law enforcement authorities until September 20, 1977. It was the theory of the government that the theft was an "inside job."

of the interstate transportation of stolen motor vehicles.

■ As to the interstate commerce status of the vehicle when the defendant sold it to "A. Picaro & Associates," we will assume that the jury might have found that as of the time of sale the necessary nexus between the vehicle and interstate commerce existed. But, we do not think that the jury was required to so find, and we think that the district court erred in failing to heed the timely objection to the instructions made by defense counsel.

■ Going somewhat beyond what has just been said, a federal trial judge in instructing a jury in a criminal case is required to define accurately the essential elements of the offense charged, and a failure on the part of the trial judge to do so is "grave error." C. Wright, Federal Practice & Procedure, Criminal, § 487, p. 300, and cases cited.

In this case the trial court's statement of what constituted the "third element" of the offense was simply incorrect from a legal standpoint. The question was not whether the defendant had sold or disposed of the van "after it had moved in interstate commerce," but whether the defendant had sold or disposed of the vehicle while it was still "a part of and constituted interstate commerce."

We have examined the over-all instructions of the district court to determine whether the error just indicated was cured by some other instruction or instructions. While we find that the district court did read § 2313 to the jury and did correctly summarize the indictment, we do not think that those actions were sufficient to cure the error.

It follows that the judgment of the district court must be reversed and the case remanded for a new trial.

The problem raised by the fact that the trial judge permitted the jury to see and hear the video tapes for a second time after the jurors had begun their deliberations will probably not recur in the course of a new trial. For that reason we find it unneces-sary to decide whether it was error to permit the second viewing and hearing of the tapes by the jury.

Reversed and remanded for a new trial.