**PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Thomas Edward JACKSON, Defendant-Appellant.**

No. 80SA257.

Supreme Court of Colorado, En Banc.

April 27, 1981.

Rehearing Denied May 18, 1981.

742 

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarky, Sol. Gen., Lynne Ford, Asst. Atty. Gen., Litigation Section, Denver, for plaintiff-appellee.

Michael S. Kaminski, Denver, for defendant-appellant.

ERICKSON, Justice.

The defendant Thomas Edward Jackson, appeals his convictions by a jury for two counts of theft over $200 but less than $10,000, section 18–4–401, C.R.S.1973 (1978 Repl. Vol. 8); two counts of theft by receiving, section 18–4–410, C.R.S.1973 (1978 Repl. Vol. 8); and two counts of conspiracy to commit theft and theft by receiving, section 18–2–201, C.R.S.1973 (1978 Repl. Vol. 8). He was sentenced to concurrent sentences in the custody of the Department of Corrections of 0 to 4 years for theft and theft by receiving, and 0 to 3 years for conspiracy. The sentences were suspended and the defendant was placed on probation for 3 years and ordered to pay his attorney fees. We affirm the defendant's convictions for theft by receiving and conspiracy to commit theft by receiving. We reverse and remand to the district court with directions to vacate the defendant's convictions for theft and conspiracy to commit theft.

The convictions in this case arise out of a widely publicized police store-front or sting operation in Lakewood, Colorado, which the police used as a means for curbing theft in the greater Denver area. Stolen items such as firearms, stereos, television sets, musical instruments, and automobiles were purchased by undercover agents of the Federal Bureau of Investigation and the Lakewood Department of Public Safety at a Lakewood building that was set up to give the impression that it was the headquarters for a major fencing operation. Between 100 and 200 fencing transactions involving the undercover agents and suspects were monitored and video taped.

The defendant was hired by two men, Sanchez and Ruthewic, to drive stolen automobiles to the store-front operation in Lakewood. Testimony at trial established that the undercover agents had dealt with Sanchez and Ruthewic on at least a dozen occasions. The defendant drove a stolen 1976 Volvo to the store-front operation and received $200. Later that same day, the defendant delivered a stolen 1977 Oldsmobile to the store-front and received an additional $400. These fencing transactions were monitored and video taped for use at trial.

At trial, the defendant admitted his participation in the fencing of the stolen automobiles. He asserted, however, diminished responsibility as a result of alcoholism and drug addiction, and denied participation in the theft of the automobiles.

The primary issues asserted on appeal relate to the prejudice that the defendant suffered when the jury was allowed to view the video tape of the fencing transactions in its entirety, the refusal of the trial court to instruct the jury on entrapment, and the failure of the trial court to require the prosecution to elect between the charges of theft and theft by receiving in accordance with *People v. Lamirato*, 180 Colo. 250, 504 P.2d 661 (1972). Our review of the record satisfies us that no error occurred in the admission of the video tape or the refusal of the trial court to instruct the jury on entrapment. However, the failure of the trial court to require the prosecution to elect between the theft and theft by receiving counts requires that we reverse the defendant's convictions for theft and conspiracy to commit theft.

*Video Tape*

The defendant asserts that the trial court abused its discretion in permitting the jury to view the entire video tape of the fencing transactions. Central to the defendant's objection to the admission of the video tape is his admission of prior crimes and his

willingness to participate in future criminal activity, including murder and robbery, to obtain firearms for sale to the store-front operation.

The general rule governing the admissibility of other crimes is set forth in *Warford v. People*, 43 Colo. 107, 96 P. 556 (1908), where we stated that evidence is not admissible which shows, or tends to show, that the accused has committed a crime wholly independent of the offense for which he is on trial.

In *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959), we imposed limitations on the admission of evidence of other crimes by requiring a showing of a nexus between the offense for which the defendant is presently charged and other criminal transactions, acts, or conduct. In those cases where evidence of other crimes is admissible to show scheme, plan, design, or intent, the trial court is required to instruct the jury as to the limited purpose for which the evidence is offered. *People v. Geller*, 189 Colo. 338, 540 P.2d 334 (1975); *People v. Ihme*, 187 Colo. 48, 528 P.2d 380 (1974); *Stull v. People, supra.*

The defendant alleges first that the video tape contained evidence of other crimes that were not admissible under any of the exceptions to the general rule of exclusion. Second, he alleges that if the evidence of other crimes was admissible under an exception to the general rule, the trial court erred by failing to instruct the jury on the limited purpose which the evidence served. We disagree.

The rule enunciated in *Stull v. People, supra*, and its progeny, does not govern this fact situation. *Stull* involved the admission of evidence of other crimes of a similar

nature which were wholly independent of the offense charged. *See also, People v. Geller, supra.* Here, the evidence of other crimes was intertwined with the commission of the offense charged, and was part of the *res gestae.*

The defendant's admission of past criminal misconduct and his willingness to participate in future criminal conduct was clearly prejudicial. However, where evidence of other crimes occurs as part of the *res gestae* of the offense, evidence of other crimes is admissible, provided that the evidence is relevant and its probative value is not substantially outweighed by the probability of unfair prejudice to the accused. *United States v. Childs*, 598 F.2d 169 (D.C. Cir.1979). *See People v. Shackelford*, 182 Colo. 48, 511 P.2d 19 (1973).

In *White v. People*, 177 Colo. 386, 494 P.2d 585 (1972), we held that evidence of other crimes was admissible where that evidence was not wholly independent of the offense charged. Here, the defendant's statements occurred as part of his efforts to gain credibility in the fencing of stolen automobiles and in an effort to lay the groundwork for future fencing transactions. The evidence relating to the defendant's willingness to commit other crimes was admissible to show the defendant's knowledge and criminal intent, and fell short of establishing the commission of another crime.

The evidence of other crimes in this case was part of the *res gestae* of the fencing transactions. The probative value of the evidence was not substantially outweighed by the probability of unfair prejudice to the defendant.[1]

---

1. The trial court's determination of unfair prejudice may rest upon consideration of: (1) the accused's theory of the case; (2) whether the other crimes are the same as the crime for which the defendant stands charged in the immediate case; (3) to what extent, if any, the police have played to the camera; (4) whether the defendant is the victim of honey potting (placing the pot of gold at the end of the crime rainbow); or (5) whether the defendant is a victim of selective or target prosecution. For example, in *United States v. Brooks*, 567 F.2d 134 (D.C.Cir.1977), the court held that the jury could view the video tape of a fencing transaction where the defendant admitted that his main business was stealing. In *Brooks*, the defendant's theory of the case was that he was an innocent in the fencing transaction. The court concluded that the defendant's admission that his main business was stealing could be used to contradict his theory of the case. In *United States v. Wiggins*, 509 F.2d 454 (D.C.

Throughout the trial the defendant contended that due to alcoholism and his former addition to heroin, he did not have the mental capacity to exercise the specific intent required by the theft statute. Defense counsel in his opening statement asked the jury to pay particular attention to the video tapes and to observe the defendant's demeanor. The defendant testified that the video tape accurately portrayed his acts and his contact with the sting operation, but said that he was drunk and was "jiving" or lying to the sting agents. He said that his only previous contact with the law was for fishing without a license, and that all reference to his criminal plans and past activities was to impress the sting agents. The trial court instructed the jury, at the instance of defense counsel, on the affirmative defense of impaired mental condition and on voluntary intoxication. The jury was also instructed on the defendant's theory of the case. The defendant's theory and claim was that his "mental and physical condition was such as to render him incapable of appraising the scope and nature of his conduct." In short, the defendant admitted the commission of the acts, and the accuracy of the video tapes, but claimed that by reason of his impaired mental condition and voluntary intoxication, he could not formulate the intent required to commit the crimes charged.

■ The evidence of guilt in this case was so overwhelming that to order a new trial would be tantamount to declaring the issue of guilt to be irrelevant. Accordingly, the trial court did not abuse its discretion in allowing the jury to view the video tape in its entirety.

Cir.1975), the court concluded that it was reversible error to allow the jury to view a video tape of the defendant stating that he had committed three other murders where the defendant was on trial for murder. The court concluded that by allowing the jury to hear the defendant's admission of the prior unrelated murders, the jury was left free to reason that the defendant had probably committed the murder for which he was being charged. *See also, United States v. Childs*, 598 F.2d 169 (D.C.

## Entrapment

The defendant asserts that the trial court erred by failing to instruct the jury on the affirmative defense of entrapment and, alternatively, that the trial court should have submitted an entrapment instruction to the jury as the defendant's theory of the case. We disagree.

Section 18–1–709, C.R.S.1973 (1978 Repl. Vol. 8), provides:

"The commission of acts which would otherwise constitute an offense is not criminal if the defendant engaged in the proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and the methods used to obtain that evidence were such as to create a substantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced. Merely affording a person an opportunity to commit an offense is not entrapment even though representations or inducements calculated to overcome the offender's fear of detection are used."

■ The plain wording of the statute indicates that the defense of entrapment cannot be established in those cases where the police merely furnish the defendant with an opportunity to commit a crime. *People v. Lee*, 180 Colo. 376, 506 P.2d 136 (1973). The defense of entrapment is available only where the defendant shows that law enforcement agents, in fact, induce, instigate, and cause a criminal offense to be committed. *People v. Bucher*, 182 Colo. 211, 511 P.2d 895 (1973). *See United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36

Cir.1979); *United States v. Hiscott*, 586 F.2d 1271 (8th Cir.1978). Convictions in the "Brilab" and "Abscam" cases, all involving bribes to government officials, were supported by evidence which was preserved on video tape. *United States v. Marcello*, 508 F.Supp. 586 (E.D.La.1981), (1981). The convictions obtained against Congressmen Myers, Jenrette, and others for their involvement in Abscam are now on appeal.

L.Ed.2d 366 (1973); *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). *See also, Patterson v. People*, 168 Colo. 417, 451 P.2d 445 (1969).

The agents' conduct in this case falls short of instigation of a crime which would constitute entrapment. The record indicates that Sanchez initially contacted the undercover agents regarding the fencing of stolen property. The undercover agents did not contact the defendant to obtain delivery of the stolen property. Accordingly, the trial court properly refused to instruct the jury on entrapment, both as an affirmative defense and as the defendant's theory of the case.

### Motion to Elect

At the close of the prosecution's case, the defendant made a motion to require the prosecution to elect between the theft and theft by receiving counts. The motion was denied and the defendant asserts that the prosecution should have been required to elect between the theft and theft by receiving counts. We agree with the defendant and reverse the convictions for theft and conspiracy to commit theft. We affirm the convictions for theft by receiving and conspiracy to commit theft by receiving.

*People v. Lamirato, supra,* declared that a person who has actively participated in a theft cannot be convicted of both the theft and theft by receiving of the stolen property. *Accord, Glass v. United States,* 351 F.2d 678 (10th Cir. 1965).

In enacting the theft by receiving statute, section 18-4-410, C.R.S.1973 (1978 Repl. Vol. 8), the General Assembly intended to reach a distinct group of wrongdoers. The class includes those persons who receive, retain, or dispose of property received from another person with the knowledge or reasonable belief that the property has been stolen. The legislative intent was not to expand the offense of theft, but to create a separate crime. *See Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).

Consistent with our directions in *People v. Lamirato, supra,* the trial court erred in not requiring the prosecution to elect between theft and the related conspiracy count on the one hand, and theft by receiving and the counterpart conspiracy on the other. Alternatively, the trial court could have instructed the jury that it could find the defendant guilty of theft or theft by receiving, but not both, and if it found the defendant guilty of one theft count, it might find him guilty of the related conspiracy count, but not both conspiracy counts. *Cf. Albernaz v. United States,* —— U.S. ——, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). (Where Congress clearly intended to permit the imposition of consecutive sentences for violations of conspiracy to import and conspiracy to distribute marijuana and the statutory provisions involved specified different ends as the proscribed object of the conspiracy, the imposition of consecutive sentences for separate conspiracy violations of the two statutes does not violate the Double Jeopardy Clause of the Fifth Amendment.)

A new trial is not necessary. The sentence imposed by the trial court is not affected by the dismissal of the theft and the conspiracy to commit theft convictions, if the theft by receiving and related conspiracy convictions are allowed to stand. From the record it is clear that the defendant's conduct constituted the crimes of conspiracy to commit theft by receiving and theft by receiving. Therefore, we reverse the defendant's convictions for theft and conspiracy to commit theft.

The defendant's final argument that the theft by receiving statute, section 18-4-410, C.R.S.1973, is unconstitutionally vague and overbroad is without merit. *People v. Stage,* 195 Colo. 110, 575 P.2d 423 (1978); *People v. Holloway,* 193 Colo. 450, 568 P.2d 29 (1977).

Accordingly, the defendant's convictions for theft by receiving and conspiracy to commit theft by receiving are affirmed. The defendant's convictions for theft and conspiracy to commit theft are reversed and

the cause is remanded to the district court with directions to dismiss.

ROVIRA and LOHR, JJ., dissent.

LOHR, Justice, dissenting:

I respectfully dissent from that portion of the majority opinion holding that the trial court did not abuse its discretion in allowing the jury to view the video tape in its entirety. I concur with all the other portions of that opinion.

Prior to the trial the defendant moved to suppress the video tape of his activities in delivering the stolen cars to the undercover agents.[1] At the pre-trial hearing on that motion, defense counsel suggested that, in the alternative, part of the tape be excised. At the conclusion of the hearing the court ruled that neither suppression nor excision was appropriate and denied any relief.[2] During the defendant's jury trial the video tape was received in evidence over his objection.[3]

Although the video tape depicted events occurring and statements made during the course of commission of the crimes charged, the undercover agents actively sought to elicit from the defendant prejudicial information not directly related to such crimes, knowing full well that the statements were being preserved on a video tape. A few examples will suffice to illustrate:

Agent 2: If I need you sometime to run a trip [to transport stolen vehicles] down to Houston, would you be available?

Mr. Jackson: I sure would.

. . . . .

Agent 2: Do you have any (inaudible)

Mr. Jackson: Oh, no.

Agent: —that might help us with some pieces [i. e. guns] or something? I'm always looking for them.

Mr. Jackson: Well, there's a possibility. There's a place we've been casing out. I might be able to do something there.

. . . . .

Agent 2: Is this a business you're casing?

Mr. Jackson: Yes, it is. Yes, it is.

. . . . .

Agent 2: Well, they got pieces in there, don't they?

Mr. Jackson: Well, the guy would have to be wasted.

Agent 2: Oh (pause) Well . . .

Mr. Jackson: . . . might not want to do it.[4]

Mr. Jackson: I've kind of been thinking about it.

Agent 2: Well, you going to do it at night? Obviously, huh?

Mr. Jackson: No. The way I was planning it was just kinda go in and—

Agent 2: And hold the place up?

Mr. Jackson: No.

Agent 2: No?

Mr. Jackson: Just knock his ass off, man.

The principle that evidence of other crimes, wrongs, or acts is inadmissible to prove that the accused has a propensity to commit the crime which is charged is well established. E. g., *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979). The present case presents the question of the applicability of that principle to prejudicial statements made by a defendant during the course of criminal conduct and relating to matters not directly involved in the charges for which the defendant is being tried. The test for admissibility of such statements

1. Sound accompanied the video portion of the tape.

2. The court ruled as follows:
"Well, the Court feels that the jury is entitled to view the entire circumstances of an offense which has been video taped. I don't see any particular prejudice to the defendant in showing them the entire tape. If he made bravado remarks, they were voluntary, as far as the Court can tell from what went on. And I also think that all of the conversations

and the totality of circumstances bears on the defendant's intent concerning the charges which he is now defending against."

3. The defendant did not request a jury instruction limiting the purposes for which any of the video tape evidence could be considered. *See Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959).

4. This line appears on the video tape but does not appear in the typed transcript.

was set forth as follows in *United States v. Childs*, 598 F.2d 169, (D.C.Cir.1979) at 173:

> "We are unable to subscribe to the broad proposition that evidence of other offenses may be introduced simply because it recounts events temporally related to the commission of a crime for which the accused is on trial. *The long-established rule requires a pre-admission showing that the evidence is relevant and that its probative value is not substantially outweighed by the probability of unfair prejudice to the accused.*" (Emphasis added.)

This is the test which the majority appropriately has adopted.

As the above examples illustrate, the video tape contains much that is at once minimally relevant and highly prejudicial. The evidence does not support the trial court's finding that there was no particular prejudice to the defendant in showing the jury the entire tape.

Some of the defendant's statements not quoted relate to vaguely described past criminal activity. Most of the prejudicial material such as that quoted relates to the defendant's willingness to engage in future criminal activity. Almost all of the defendant's prejudicial statements about past and intended future criminal conduct were elicited by direct, and often suggestive, questions asked by the undercover agents. The video tape is strongly indicative that the police played to the camera and made the defendant a victim of what the majority calls honey potting. *See* footnote 1 of the majority opinion, where these police activities are suggested as relevant considerations in determining whether the prejudicial effect of video tape evidence substantially outweighs the probative value of the evidence.

Relevant purposes for which the prosecution might have sought to have the video tape placed before the jury were to establish the identity of the defendant and his culpable mental state, including his acknowledgement of the criminal nature of his activities with respect to the vehicles which he delivered. These purposes could have been served by excision of parts of the tape or by eliminating the sound accompanying the video presentation of parts of the tape. *See Thompson v. People*, 181 Colo. 194, 510 P.2d 311 (1973). Failure to adopt such measures to shield the jury from the police-elicited statements of the defendant relating to criminal activities and propensities which were at most minimally relevant to the charges for which he was on trial created unnecessary and unfair prejudice to the defendant. Under the circumstances of this case, I conclude that the probative value of that evidence is substantially outweighed by the probability of unfair prejudice to the accused. *See United States v. Childs, supra.*

I would reverse the defendant's conviction and remand the case to the district trial court for a new trial.

ROVIRA, J., joins me in this dissent.