**Lester REDDING, Jr., Appellee,**

v.

**Charles BENSON, et al., Appellant.**

**No. 83–2628–NE.**

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1984.

Decided July 30, 1984.

Michael D. Gooch, and Sean J. Brennan, Deputy Public Defenders, Lincoln, Neb., for appellant.

Paul L. Douglas, Atty. Gen., Martel J. Bundy, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

FLOYD R. GIBSON, Senior. Circuit Judge.

Lester Redding, an inmate at the Nebraska State Penitentiary, petitions for habeas corpus relief.from his jury conviction for "attempted theft by deception of property valued at over $1,000.00". Redding contends the state trial court constitutionally erred in failing to instruct the jury that, in order to convict Redding, it had to find beyond a reasonable doubt that the value of the specific property Redding attempted to steal exceeded $1,000.00. The state has acknowledged that value was a material element of the offense and that the trial court constitutionally erred in failing to instruct on this material jury element. The state, however, has urged that this error was harmless beyond a reasonable doubt because the jury specifically found and the uncontested evidence clearly demonstrated that the items Redding attempted to steal had a value of $12,000.00, significantly in excess of the $1,000.00 value threshold. The Nebraska Supreme Court and the district court agreed with the state's claim of harmlessness. So do we, but only because of the unique factual circumstances of this particular case.

## I.

The relevant facts are undisputed and based almost entirely on the uncontradicted testimony of the theft victim, Mr. Thorson. On June 8, 1981, Mr. Thorson was approached by Redding who asked for directions to a boarding house. While trying to locate the house, the two men met Redding's two accomplices, "Larry" and "Rose". Using a clever ploy [1], Redding

---

1. The ploy was set up as follows. Redding told the others that he had $37,000 in cash on him, which represented his insurance collections

and his two accomplices lured Thorson into a game of three-card monte, a shell game. Thorson apparently realized that he was the intended victim of a confidence game, but decided to play along until he could contact the police.

After letting Thorson win a couple of games, Rose, the card dealer, persuaded Thorson to put up his wallet, watch, and ring—which had a combined value of about $234.00—against Redding's bet in another round. After Redding won this round, Rose told him he had to give Thorson a chance to win back his property. Redding agreed, but only on the condition that the stakes be raised to $15,000.00. Thorson went along with this and won the next game, but Redding said he would not pay off until Thorson proved he could have covered the bet had he lost. After some argument, Thorson reluctantly agreed to go to the bank and return with several certificates of deposit worth $15,000.00. Thorson and Larry went to the bank, while Redding and Rose waited in Rose's van. Redding and Rose held Thorson's watch, ring, and wallet, which they had placed inside a red handkerchief.

When Thorson and Larry returned with the $15,000.00 in certificates, Redding said he would accept only cash as proof. After an argument, Thorson agreed to try to cash the certificates, but only after Redding agreed to reduce the amount of cash required to $12,000.00. Thorson and Rose, still holding Thorson's property, waited in Rose's van. Thorson went inside the bank alone and, using the certificates as collateral, applied for a $12,000.00 loan. While in the bank, Thorson called the police, told them about the confidence game, and asked that they meet him back at Rose's van. Thorson and Larry then returned to the van, where Larry, Rose, and Redding were arrested. The red handkerchief containing the victim's property was found by a police officer underneath a car, parked in the area where Rose had attempted to escape when she first spotted the police.

The trial court instructed the jury that Redding was charged with attempting to steal by deception money or property of Thorson valued at over $1,000.00. The court then instructed the jury as to the material elements of the charged crime, which the state had to prove beyond a reasonable doubt in order to convict.[2] The

---

from his brother's death. Rose and Larry, in Thorson's presence, told Redding that he should not carry that much cash. Redding and Larry then went to the bathroom. During this time, Rose showed Thorson a card game, "three card monte", which she said she could use to "con" Redding out of his money. Rose told Thorson they should entice Redding into playing the card game, not to actually take his money, but to "teach" him how foolish it was to carry so much cash. Thorson, realizing that he was the real intended victim of this shell game, decided to play along until he could contact the police.

**2.** The court instructed the jury as follows:

The material elements which the state must prove by evidence beyond a reasonable doubt in order to convict the defendant of the crime charged are:

1. That the defendant intentionally engaged in conduct which, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of theft by deception.

2. That defendant did attempt to steal by deception money or property of value belonging to Thomas B. Thorson.

3. That he did so on or about the 8th day of June, 1981, in Lancaster County, Nebraska.

The state has the burden of proving beyond a reasonable doubt each and every one of the foregoing material elements necessary for a conviction.

If you find beyond a reasonable doubt that the defendant is guilty of attempting theft by deception it will be necessary for you to find the value of the money or property attempted to be taken by deception from Thomas B. Thorson, if any.

If you find from the evidence beyond a reasonable doubt that each of the foregoing material elements is true, it is your duty to find the defendant guilty. On the other hand, if you find the state has failed to prove beyond a reasonable doubt any one or more of the foregoing material elements it is your duty to find the defendant not guilty.

The burden of proof is always on the state to prove beyond a reasonable doubt all of the material elements of the crime charged, and this burden never shifts.

court specifically instructed that one of the material elements of the crime was, "that defendant did attempt to steal by deception money or property of value belonging to Thomas B. Thorson". The jury was twice told that the state had to prove this beyond a reasonable doubt. The court then instructed the jury that if it found, beyond a reasonable doubt, that Redding was guilty of attempting theft by deception, they had to find the value of the property he had attempted to steal; the court, however, did not say that the state had to prove, beyond a reasonable doubt, that the property which was the subject of the attempted theft was worth more than $1,000.00. In finding the defendant guilty as charged, the jury also found that the value of the money or property Redding attempted to steal was worth $12,000.00. Redding appealed his conviction to the Supreme Court of Nebraska. That court, in *State v. Redding*, 213 Neb. 887, 331 N.W.2d 811, 814–15 (1983), concluded that the trial court had erred in failing to instruct that $1,000.00 value threshold was a material element of the crime which must be proven beyond a reasonable doubt. However, the court, invoking *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), held that the error was "harmless beyond a reasonable doubt" because: (1) the victim's uncontradicted testimony clearly established that the ring, watch, and wallet (worth $234.00) had already been taken; (2) the only other property the jury could have determined to be the subject of the attempted theft was the $12,000.00 in cash. *Id.* 331 N.W.2d at 814–15. The district court, in denying Redding's habeas petition, agreed with the Nebraska Supreme Court's harmless error analysis and emphasized that the jury had in fact found the property Redding attempted to steal was worth $12,000.00.

## II.

As the state concedes, the trial court constitutionally erred in failing to instruct the jury that, before it could convict Redding, it had to find beyond a reasonable doubt that the items of property or money Redding attempted to steal had a value exceeding $1,000.00.[3] However, it is clear that the instructional error was harmless beyond a reasonable doubt. The jury was instructed that, to find Redding guilty of the crime charged, it had to find beyond a reasonable doubt that Redding attempted to steal by deception money or property belonging to the victim. Thus, since the jury convicted Redding it necessarily must have found beyond a reasonable doubt that Redding attempted to steal specific money or property belonging to Thorson. It is undisputed that there were only two possible choices of items which Redding could have attempted to steal. One was the ring, watch, and billfold, which together were undisputedly valued at $234.00. The other was the $12,000.00 in cash Redding was going to get from the bank. The jury in fact found that the property Redding attempted to steal was valued at $12,000.00. This finding eliminates any conceivable possibility that the jury convicted Redding of attempting to take the victim's ring, watch, and billfold, since those items were worth only $234.00. Furthermore, as the Supreme Court of Nebraska stated, "[t]he testimony of the victim established without question that the ring, watch, and billfold had already been obtained by Redding." 331 N.W.2d at 814.[4] Thus, it is clear that the item of property which the jury found beyond a reasonable doubt that Redding

---

3. The state acknowledges that, because value was a material element of the offense, the trial court's failure to instruct that the state had to prove that element beyond a reasonable doubt amounted to constitutional error—i.e., a violation of due process. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); *Sandstrom v. Montana*, 442 U.S. 510, 520, 524, 99 S.Ct. 2450, 2457, 2459, 61 L.Ed.2d 39 (1979).

4. The victim's uncontroverted testimony established that after he lost the ring, watch, and wallet, Redding and Rose placed those items in the red handkerchief. Thereafter Redding and/or Rose continued to possess these items until the police arrived and arrested them. The jury was instructed that if they found that another theft was completed, they could not find Redding guilty because of that separate, completed theft.

attempted to steal had to be the $12,000.00 in cash. The only element lacking is a finding beyond a reasonable doubt that $12,000.00 in cash has a value over $1,000.00. In view of these unique circumstances, we find the instructional error was harmless beyond a reasonable doubt.

■ Redding, however, contends that a trial court's failure to properly instruct on a material element of a crime is a due process violation so basic and fundamental that it can never be rendered harmless. In *Chapman v. California*, 386 U.S. at 23, & n. 8, 87 S.Ct. at 827, & n. 8, the Court recognized that "there are some constitutional rights so basic to fair trial that their infraction can never be treated as harmless error." Those "never harmless" constitutional deprivations include the admission of coerced confessions, the denial of the right to counsel, and the denial of a right to an impartial judge. *Id.; see also Connecticut v. Johnson*, 460 U.S. 73; 103 S.Ct. 969, 975, 74 L.Ed.2d 823 (1983). Redding urges that we similarly treat an instructual error on a material element as "never-harmless." We decline to do so.

Thus far neither the Supreme Court nor the Eighth Circuit has adopted the position Redding would have us adopt here. In *Connecticut v. Johnson*, 103 S.Ct. at 977, a plurarity of four Supreme Court Justices ruled that a *Sandstrom* -type instruction—i.e., one raising a conclusive or burden shifting presumption on the issue of defendant's intent—could never be considered harmless. In *Johnson*, the defendant was charged with murder, kidnapping, robbery and sexual assault. The state trial court instructed the jury that it should conclusively presume that every person intends the natural consequences of his act. The State of Connecticut argued that error had been harmless under *Chapman*. The *Johnson* plurality, after discussing two pre-*Chapman* cases holding that instructional errors were not harmless, stated:

We agree with the State that, in light of *Chapman*, these cases cannot be read for the broad proposition that instructional error of constitutional dimensions may never be harmless. This is not to say, however, that *any* form of instruc-

tional error should be analyzed for harmlessness. The question here is whether a charge that might reasonably have been interpreted to require a conclusive presumption on the issue of intent may be considered harmless.

The Court consistently has held that "a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict ... regardless of how overwhelmingly the evidence may point in that direction." ... And *Sandstrom* makes it clear, we think, that a conclusive presumption on the issue of intent is the functional equivalent of a directed verdict on that issue.

. . .

... If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant. To allow a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury never may have performed that function, would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made.

*Id.* 103 S.Ct. at 976–77.

Thus, it is clear that the plurality limited its holding to instructions raising a conclusive presumption on the evidence on intent. In the plurality's analysis, such an instruction was tantamount to a directed verdict on intent, thereby depriving the jury of its proper fact finding function. We believe that the plurality ruling in *Johnson* is inapposite here because the jury considered the evidence on the material element of value and made a specific finding, supported by overwhelming evidence, from which we can only infer that the jury determined that the value threshold had been satisfied; thus, the jury's critical factfinding function was not thwarted, as it was in *Johnson* —at least according to the plurality.

In any event, only four Justices adopted a rule requiring automatic reversal for *Sandstrom* instructional error. Justice Stevens concurred only in the judgment. The four dissenting Justices embraced *Chapman* and concluded that "the proper inquiry is whether a court may say beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 103 S.Ct. at 981–82, *quoting Chapman*, 386 U.S. at 24, 87 S.Ct. at 828.[5]

Redding also cites two Eighth Circuit cases which he says support his claim that an instructional error on a material element can never be considered harmless. In *United States v. Hiscott*, 586 F.2d 1271 (8th Cir.1978), the jury was incorrectly instructed on essential element of a Vehicle Theft (Dyer) Act violation (18 U.S.C. § 2313). The trial court had instructed that the vehicle in question must have been sold or disposed of "after it had been moved in interstate commerce," rather than "while it was still a part of and constituted interstate commerce." The court in *Hiscott* concluded that the instructional error, characterized as "grave error," warranted a reversal under the circumstances of that case. The *Hiscott* court did not establish a rule that erroneous instructions on material elements can never be harmless. In fact, the court there specifically noted the evidence as to interstate commerce status was not such that the jury, if properly instructed, was required to find

the defendant guilty of violating the Dyer Act. *Id.* at 586 F.2d at 1275.

In *Dietz v. Solomon*, 640 F.2d 126 (8th Cir.1981), the second Eighth Circuit case Redding relies upon, the state trial court had given a *Sandstrom*-type conclusive or burden-shifting instruction on the element of intent. The Eighth Circuit panel examined the facts for prejudice on the intent issue and concluded that the error was not harmless under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Id.* at 131. Significantly, the panel declined to say that such error could never be regarded as harmless.[6]

We thus find no persuasive support for Redding's contention that the failure to properly instruct on a material element requires automatic reversal, regardless of whether the error was harmless. Accordingly, since the instructional error here was harmless beyond a reasonable doubt, we deny the writ.

**5.** Redding, however, points out that the dissenters stated in footnote 3 of Justice Powell's dissent: "Because a presumption does not remove the issue of intent from the jury's consideration, it is distinguishable from other instructional errors that prevent a jury from considering an issue". *Id.* 103 S.Ct. at 982 n. 3. But, as discussed above, we are not dealing here with an instructional error that prevented the jury from considering a material element of the crime charged.

**6.** Redding also relies on two cases from other Circuits which we believe are inapposite here. First, in *United States v. Howard*, 506 F.2d 1131 (2nd Cir.1974), the court concluded that a trial court's deficient instructions warranted a reversal of defendant's conviction for bank robbery. In doing so, however, the court emphasized the

trial court's instruction on the crime of bank robbery was so sketchy that the jury could not have known what the elements of the crime were—"[the] jury [was] operating almost completely in the dark." *Id.* at 1134.

In *Glenn v. Dallman*, 686 F.2d 418 (6th Cir. 1982), the jury found petitioner guilty of aggravated burglary, "but was never instructed that it must find the state proved beyond a reasonable doubt that a person was likely to be present in the dwelling burglarized in order to convict of aggravated burglary.". *Id.* at 421. The court, in concluding the instructional error was harmful, emphasized that there were facts from which the jury, under proper instruction, could have found that no one was likely to be present at the time of the burglary. *Id.* at 422. Thus, the court implicitly applied the *Chapman* standard in determining that the error was not harmless.