The PEOPLE of the State of
Colorado, Petitioner,

v.

Edgar L. SMITH Respondent.

No. 96SC25

Supreme Court of Colorado, En Banc.

April 28, 1997.

As Modified on Denial of Rehearing
May 19, 1997.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assis-

tant Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Criminal Enforcement Section, Denver, for Petitioner.

John Turner, Colorado Springs, for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

Edgar Smith was tried on charges of second degree burglary and theft. The jury acquitted Smith of burglary and was unable to reach a verdict on the theft charge. We granted certiorari in *People v. Smith*, 919 P.2d 843 (Colo.App.1995), to consider whether the doctrine of collateral estoppel barred reprosecution of Smith for the crime of theft. Because we determine that the burglary acquittal did not definitely and necessarily decide an element necessary to prove the theft charge, we reverse the court of appeals decision and remand with directions to reinstate Smith's theft conviction.

## I.

On November 17, 1992, a house in a Colorado Springs neighborhood was burglarized. A resident of that neighborhood called the El Paso County Sheriff's Department to report suspicious activities by someone driving a brown van in the area. A sheriff's deputy located and began following the van. The deputy attempted to stop the van by turning on his emergency lights but the driver of the van accelerated and a chase ensued. The van ultimately crashed into a field. When the deputy reached the van he found it unoccupied with both doors open. Inside the van the deputy located property later determined to have come from the scene of the burglary.

Other law enforcement officers with trained dogs arrived to assist in the search and about twenty minutes after the crash the officers found Edgar Smith hiding in some nearby bushes. The officers found more of the burglarized property on the ground near his hiding place and in the pockets of the jacket he was wearing.

The officers arrested Smith and charged him with second degree burglary, conspiracy to commit second degree burglary, theft, and theft by receiving. At a preliminary hearing, the trial court dismissed the charges of conspiracy and theft by receiving. A jury trial was later held on the second degree burglary and theft charges.

At trial, Smith testified that he did not participate in the alleged burglary. He admitted that he had been in the van, but claimed that his friend Bobby Adams, who was driving the van, was the one who actually committed the burglary and theft. Smith testified that he originally did not know Adams was planning to burglarize the house and that when he learned of the plan he tried to discourage Adams. He stated that he was effectively trapped in the van once the chase began and that when it crashed he fled in fear. As for the jacket with stolen property in the pockets, Smith claimed that it belonged to Adams and he grabbed it to protect himself from the impact just before the van crashed. At the trial, Adams was also called as a witness and he testified that Smith participated in the breaking and entering of the victim's house and the theft of the property.

At the close of the evidence, the trial court instructed the jury on the elements of burglary and theft and also instructed them that Smith could be convicted of either offense as a principal or complicitor.[1] Finally, the trial court instructed the jury that it could infer from the unexplained possession of recently stolen property that Smith was guilty of burglary and theft, if the jury determined that such an inference was warranted in light of the evidence as a whole. The jury acquitted Smith on the second degree burglary charge but could not reach a verdict on the charge of theft. The trial court declared a mistrial on the theft charge. It then denied Smith's post-trial motion for dismissal of the theft

---

1. The Complicity Jury Instruction provides that a defendant may be guilty as a complicitor if the State establishes beyond a reasonable doubt that a crime was committed; that a person other than the defendant committed all or part of the crime; that the defendant had knowledge that the other person intended to commit the crime; and that the defendant intentionally aided, abetted, advised, or encouraged the other person in the planning or commission of the crime. CJI–Crim. 6:04.

charge and this court denied his petition for writ of prohibition.

In November 1993, Smith was re-tried on the charge of theft. At the second trial, the court prohibited the prosecution from presenting any evidence of the burglary except evidence relevant to proving the theft. The court permitted the prosecution to submit the case to the jury on a theory of complicity so long as no evidence was offered to show that Adams or Smith had broken into the victim's home. Neither Smith nor Adams testified at the second trial, and the testimony of the other witnesses differed from that presented at the first trial in that they made no mention of the burglary. The jury found Smith guilty of theft and, because Smith was also determined to be an habitual criminal, the trial court sentenced Smith to life imprisonment.

Smith appealed and the court of appeals reversed his conviction for theft, finding that the doctrine of collateral estoppel barred the State from relitigating the charge of theft against Smith.

## II.

In a criminal context, collateral estoppel is an integral part of the concept of double jeopardy. *See People v. Allee*, 740 P.2d 1, 4 (Colo.1987). The constitutional guarantee against double jeopardy operates to protect an accused from being placed in jeopardy twice for the same offense. *See U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18; see also Deutschendorf v. People*, 920 P.2d 53, 56–57 (Colo.1996); *People v. Allen*, 868 P.2d 379, 381–82 (Colo.1994).

■ However, collateral estoppel and double jeopardy differ and collateral estoppel may be a defense to a prosecution even when, as in this case, double jeopardy does not apply.[2] The fundamental principle of collateral estoppel is that the defendant should be protected from having to relitigate an issue of ultimate fact once that issue has been determined by a valid and final judg-

ment. *See Wright v. People*, 690 P.2d 1257, 1260 (Colo.1984).

Collateral estoppel originated in the context of civil litigation but is applicable to criminal cases as well. *See id.* We have identified the elements of collateral estoppel in a criminal context as follows:

(1) the issue that the state desires to litigate must be identical to an issue that was actually and necessarily decided in the prior litigation; (2) there must have been a final judgment on the merits of the prior litigation; (3) the state must have been a party to or in privity with a party to the prior litigation; and (4) the defendant seeking to assert collateral estoppel must have been a party to the prior litigation.

*Allee*, 740 P.2d at 5.

Additionally, the General Assembly has codified collateral estoppel in the criminal code:

(1) Although a prosecution is for a violation of a different provision of law than a former prosecution or is based on different facts, it is barred by the former prosecution under the following circumstances ...

(b) The former prosecution was terminated by an acquittal ... that necessarily required a determination inconsistent with a fact that must be established for conviction of the second offense ....

§ 18–1–302(1)(b), 8B C.R.S. (1986).

■ The United States Supreme Court has cautioned that collateral estoppel is to be applied by the courts with realism and rationality. *See Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). When a previous judgment of acquittal was based on a general not guilty verdict, a reviewing court is required to examine the entire record of the prior proceeding in order to determine whether a rational jury could have based its verdict upon a conclusion of ultimate fact other than that which the defendant seeks to preclude. *See id.* With those various principles in mind, we now turn to an analysis of collateral estoppel as applied to this case.

---

**2.** Because the statutes defining second degree burglary and theft each require an element not included in the other, these crimes are considered separate offenses. *See Allen*, 868 P.2d at

381–82. As a result, reprosecution of the theft charge following Smith's acquittal on the burglary charge at the prior trial does not constitute double jeopardy.

## III.

In the first trial, Smith was charged with second degree burglary and theft. These two crimes are defined as follows:

> **Second degree burglary.** A person commits second degree burglary, if he knowingly breaks an entrance into, or enters, or remains unlawfully in a building or occupied structure with intent to commit therein a crime against a person or property.

§ 18–4–203(1), 8B C.R.S. (1986).

> **Theft.** (1) A person commits a theft when he knowingly obtains or exercises control over anything of value of another without authorization . . . and:
>
> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value . . . .

§ 18–4–401(1)(a), 8B C.R.S. (1986). In the second trial, Smith was charged only with theft. In both trials, the jury was instructed that it could find Smith guilty as a principal or as a complicitor.

■ Guided in part by *Turner v. Arkansas*, 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972), the court of appeals concluded that a conviction for theft was collaterally estopped by Smith's acquittal on the burglary charge. We do not agree.[3]

First, we do not view the *Turner* case as presenting a similar factual setting. *Turner* involved a prosecution for felony murder where the victim was robbed and killed during a dispute over a poker game. Because state law did not permit the trial of another charge to be joined with the charge of murder, Turner was initially tried on the charge of murder only. The jury was instructed that Turner could be found guilty either as principal or accessory. The jury acquitted Turner of the murder and thereafter he was indicted for the robbery of the homicide victim. Turner moved to dismiss the robbery indictment claiming it was barred by the doctrine of collateral estoppel.

The Supreme Court concluded that a trial on the robbery charge was precluded by operation of collateral estoppel. In the defendant's first trial, the jury was instructed that if they found him to have been present at the scene of the crime, he would necessarily be guilty of felony murder whether or not he actually killed the victim himself. Thus, the jury's acquittal on the murder charge meant that they found he was not present at the scene of the crime. Without being present at the crime scene, he could not have been convicted of robbery as either an accomplice or as a principal under the facts of the case. *See id.* at 369, 92 S.Ct. at 2098–99.

The case before us is unlike *Turner*. In *Turner* there was only one crime scene and one victim. Here, there were potentially two crime scenes: (1) the house that was illegally entered and from which the items were stolen; and (2) the van where Smith was waiting.

Smith did not contest the fact that he was present in the van. As a factual matter, the theft with which Smith was charged could have occurred after the burglary, unlike the murder and robbery in *Turner*. The jury in the first trial could have acquitted Smith of burglary because they did not believe he entered the victim's home or because they did not believe that he had formed an intent to assist Adams at the time Adams entered the home. However, that same jury could have concluded that Smith later changed his mind and formed an intent to permanently deprive the victim of property that Adams had taken from the house. Our cases have long provided that a person may be acquitted of the crime of burglary yet be convicted of the crime of theft of property alleged to have been taken during the burglary. *See Renfrow v. People*, 176 Colo. 160, 163–64, 489

---

3. Because we find collateral estoppel inapplicable and resolve the issue before us accordingly, we need not reach the question of whether *People v. Frye*, 898 P.2d 559 (Colo.1995), would preempt the application of collateral estoppel to this case. *Frye* applies to inconsistent verdicts occurring in a single trial. As we have explained, the jury in this case could have logically convicted Smith of the theft charges and acquitted him of the burglary charges in the first trial. Therefore, the concept of inconsistency is not implicated here and we need not reach the question of whether *Frye* should be limited to a review of inconsistency in a single trial or whether it applies to successive trials as well.

P.2d 582, 583 (1971); *Maisel v. People*, 166 Colo. 161, 165–67, 442 P.2d 399, 402 (1968).

In the second trial, there were two possible crimes for which Smith could potentially have been found guilty. First, the jury could well have concluded that Smith was a complicitor to the theft, in that he aided or abetted Adams in completing the theft once Adams returned to the van. The second possibility is that the jury concluded Smith was guilty of theft by receiving, either as an accomplice or as a principal. However, the only charge Smith was facing was that of theft. Therefore, we now examine the interrelationship between theft and theft by receiving: an issue that has bedeviled this case.

■ The court of appeals held theft and theft by receiving to be mutually exclusive. It found that a person who actively participates in a theft cannot be convicted of theft by receiving, while a person who commits theft by receiving cannot be convicted of theft. It further found that acquittal on the burglary charge did collaterally estop a general theft charge, but would not have estopped a specific theft by receiving charge.

We disagree with this conclusion. As we have discussed, the jury's finding that Smith did not intentionally aid or abet the burglary merely indicates that he did not form the intent to be a part of the crime scheme before Adams entered the house. It says nothing about Smith's intent after Adams left the house with stolen goods. Hence, we perceive a factual distinction that the court of appeals did not.

■ In addition, we disagree with the court of appeals implicit legal conclusion that the State was precluded from charging Smith with a general crime if his conduct would have fit into a more specific crime. We conclude that a general theft charge can relate to acts that could be more specifically charged as theft by receiving.

In 1975, the General Assembly enacted a theft by receiving statute as follows:

> **Theft by receiving.** (1) . . . [A] person commits theft by receiving when he receives, retains, loans money by pawn or

pledge on, or disposes of anything of value of another, knowing or believing that said thing of value has been stolen, and when he intends to deprive the lawful owner permanently of the use or benefit of the thing of value.

§ 18–4–410, 8B C.R.S. (1986). Theft by receiving had been recognized as a particular type of theft in our case law even prior to 1975. *See, e.g., People v. Lamirato*, 180 Colo. 250, 257, 504 P.2d 661, 664–65 (1972) (holding that person charged with both theft by taking and theft by receiving could not be convicted of both charges).

Ordinarily, a prosecutor has discretion to charge any applicable offense.[4] We have previously concluded that the enactment by the General Assembly of a specific criminal statute does not preclude prosecution under a general criminal statute unless a legislative intent is shown to limit prosecution to the special statute. For example, in *People v. Westrum*, 624 P.2d 1302, 1303 (Colo.1981), we held that the fact that the charged conduct could constitute motor vehicle theft did not preclude the prosecutor from proceeding under general theft charges. Similarly, in *Hucal v. People*, 176 Colo. 529, 536, 493 P.2d 23, 27 (1972), we held that the enactment of a specific criminal statute relating to the crime of embezzlement of public monies did not preclude prosecution of that same offense under the general theft statute. *See also People v. James*, 178 Colo. 401, 405, 497 P.2d 1256, 1258 (Colo.1972) (the existence of a specific statute dealing with misuse of credit cards did not preclude prosecution of the defendant under the general forgery statute).

In contrast, we have concluded that in some instances the General Assembly can supplant the more general offense by creating a specific offense supported by clear legislative intent to limit prosecution to that statute. For example, we concluded that in adopting the Liquor Code, the General Assembly intended to require the offense of falsely filling out a liquor application to be prosecuted under the Liquor Code and not under the general felony offense of offering a false instrument for recording. *See People v.*

---

4. *See* § 18–1–408(7), 8B C.R.S. (1986).

*Bagby,* 734 P.2d 1059, 1062 (Colo.1987); *see also People v. Warner,* 930 P.2d 564, 567–68 (Colo.1996) (unlawful use of an electronic device to remove tokens from a slot machine could not be charged under the general burglary statute but was required to be charged under the Limited Gaming Act).

In determining whether the General Assembly intended by enacting a specific statute to preclude prosecution under a general statute, we have focused on: (1) whether the statute invokes the full extent of the state's police powers; (2) whether the specific statute is part of an act creating a comprehensive and thorough regulatory scheme to control all aspects of a substantive area; and (3) whether the act carefully defines different types of offenses in detail. *See Warner,* 930 P.2d at 568; *Bagby,* 734 P.2d at 1062. Here, there is no indication that when the General Assembly enacted the theft by receiving statute it intended to accomplish any of these goals.

■ Rather, in *People v. Jackson,* 627 P.2d 741 (Colo.1981), we concluded that by enacting the more specific statute of theft by receiving, the General Assembly intended to reach a distinct group of wrongdoers who receive, retain, or dispose of property received from another person with the knowledge or reasonable belief that the property has been stolen. *Jackson,* 627 P.2d at 746. We stated that "[t]he legislative intent [in enacting the theft by receiving statute] was not to expand the offense of theft, but to create a separate crime." *Id.* It is well established that a single transaction may give rise to the violation of more than one criminal statute. *See People v. James,* 178 Colo. 401, 404, 497 P.2d 1256, 1257 (1972). Thus, we now amplify the statement in *Jackson* by

adding that the legislative intent in enacting the theft by receiving statute was neither to expand *nor to limit* the offense of theft, but rather to create a separate crime. *Cf. People v. Westrum,* 624 P.2d 1302, 1303–04 (Colo. 1981) (holding motor vehicle theft statute as a separate crime from general theft).

■ In *Jackson,* we reaffirmed our holding in *Lamirato* that a person could not be found guilty of both theft and theft by receiving for the same acts and required the prosecution to elect which charge would be prosecuted. *Jackson,* 627 P.2d at 746. Hence, Smith could potentially have been convicted of either theft or theft by receiving[5] but not both.[6] Where the alleged conduct of a defendant violates both the general theft statute and a more specific theft statute, the more specific crime need not necessarily be charged; instead, the prosecuting attorney may determine the statute under which to prosecute the alleged crime. *See Westrum,* 624 P.2d at 1303; *Bagby,* 734 P.2d at 1061. Here, it is within the State's prerogative to choose the statute under which to prosecute Smith.

### IV.

We conclude that the jury in the first trial could have based the burglary acquittal on a determination of ultimate fact that would not operate to preclude a later prosecution of Smith for theft. Hence, collateral estoppel does not apply. Therefore, we remand this case to the court of appeals for consideration of the remaining issues raised by Smith on appeal.

---

**5.** We note that a theft by receiving charge was dismissed by the trial court in the first trial at the preliminary hearing stage for lack of probable cause. In this case jeopardy had not yet attached to the theft by receiving charge, but even if it had, a trial on the theft charge would not be precluded. *See People v. Griffie,* 44 Colo.App. 46, 47–48, 610 P.2d 1079, 1080–81 (1980) (defendant acquitted of theft and jury was unable to reach verdict on theft by receiving; defendant was later retried for theft by receiving and court concluded double jeopardy principles were not violated because each crime required proof of an additional fact that the other did not).

**6.** There is a split of authority with respect to whether an individual can be convicted both of theft and of theft by receiving. *See* Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.10(h) (1986). The United States Supreme Court has resolved that question in the negative with respect to federal law. *See Milanovich v. United States,* 365 U.S. 551, 553–54, 81 S.Ct. 728, 729–30, 5 L.Ed.2d 773 (1961). We also have resolved it in the negative with respect to Colorado law. *See Jackson,* 627 P.2d at 746.