The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 22, 2018

**2018COA20**

**No. 15CA0126, People v. Rojas — Crimes — Theft — Colorado Public Assistance Act — Food Stamps — Fraudulent Acts**

A division of the court of appeals considers whether a
defendant can be prosecuted for theft of food stamps under the
general theft statute, section 18-4-401, C.R.S. 2017, or whether
that defendant can only be prosecuted under a more specific
statute criminalizing the theft of food stamps by a fraudulent act,
section 26-2-305, C.R.S. 2017.  Applying the test from *People v.
Bagby*, 734 P.2d 1059 (Colo. 1987), the majority concludes that the
defendant here could only be prosecuted under the more specific
statute.  The dissent disagrees.

Court of Appeals No. 15CA0126
Larimer County District Court No. 13CR1903
Honorable Daniel J. Kaup, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brooke E. Rojas,

Defendant-Appellant.

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE FURMAN
Taubman, J., concurs
Richman, J., dissents

Announced February 22, 2018

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Rachel K. Mercer, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     In this appeal, we are asked to determine whether defendant, Brooke E. Rojas, could be prosecuted for theft of food stamps under the general theft statute, as the People argue, or whether she could only be prosecuted under a more specific statute criminalizing the theft of food stamps by a fraudulent act, as Rojas argues.  We agree with Rojas that the legislature intended that she could only be prosecuted under the more specific theft of food stamps statute.  Accordingly, we vacate Rojas's theft convictions.

## I.  Rojas's Theft

¶ 2     Rojas was working at a restaurant supporting her family until she was laid off in August 2012.  She then applied for food stamps from the Larimer County Department of Human Services.  On January 13, 2013, when requesting an extension of food stamp benefits, Rojas reported that she had no employment income.  But, she had been hired as a restaurant manager with an annual income of $55,000 per year.  While continuing to work as a restaurant manager, Rojas received $5632 worth of food stamps to which she was not entitled.

¶ 3     The prosecution eventually charged Rojas with two counts of theft under the general theft statute, section 18-4-401, C.R.S. 2017. Count 1 alleged that she had received food stamps between February 1, 2013 and June 1, 2013; count 2 alleged that she had received food stamps on July 1, 2013. In response, Rojas filed a motion to dismiss these charges, arguing that pursuant to our supreme court's decision in *People v. Bagby*, 734 P.2d 1059 (Colo. 1987), the prosecution was barred from prosecuting her under the general theft statute and could only prosecute her under a more specific statute criminalizing the theft of food stamps by a fraudulent act, section 26-2-305(1)(a), C.R.S. 2017. The trial court denied this motion, ruling that under *Bagby*, the prosecution could charge Rojas under the general theft statute.

¶ 4     Rojas then asked the court to add a lesser non-included offense instruction under section 26-2-305(2), C.R.S. 2017, which makes it a crime for a participant in the food stamp program not to report a change in that participant's financial circumstances that affects that participant's eligibility for food stamps. The prosecution agreed that this subsection "sets forth a completely new crime."

The court granted Rojas' request. The jury found her guilty of this offense, and two counts of theft under the general theft statute.

¶ 5    On appeal, Rojas challenges the trial court's denial of her motion to dismiss the general theft counts.

## II.  Standard of Review

¶ 6    In determining whether Rojas could be prosecuted under the general theft statute or whether she could only be prosecuted under the more specific statute, we recognize that a single transaction may establish the commission of more than one criminal offense. *See People v. James*, 178 Colo. 401, 404, 497 P.2d 1256, 1257 (1972).  And, usually, if a single transaction establishes the commission of more than one offense, the prosecution may prosecute the defendant for each offense committed.  *See* § 18-1-408(2), C.R.S. 2017; *see also People v. Clanton*, 2015 COA 8, ¶ 10.  But, our supreme court has determined that the prosecution is barred from prosecuting under a general criminal statute when the legislature evinces a clear intent to limit prosecution to a more specific statute.  *See People v. Smith*, 938 P.2d 111, 115-16 (Colo.

1997); *Bagby*, 734 P.2d at 1061; *People v. Montante*, 2015 COA 40, ¶ 14; *Clanton*, ¶ 11. This intent is not always explicitly stated.

¶ 7 To determine whether the legislature intended to limit prosecution to a more specific statute, our supreme court in *Bagby* has directed us to consider three factors. *Smith*, 938 P.2d at 116. These *Bagby* factors are:

> (1) whether the [specific] statute invokes the full extent of the state's police powers; (2) whether the specific statute is part of an act creating a comprehensive and thorough regulatory scheme to control all aspects of a substantive area; and (3) whether the act carefully defines different types of offenses in detail.

*Id.*; *see Clanton*, ¶ 12.

¶ 8 We review de novo whether the General Assembly intended to supplant a general criminal statute by enacting a more specific statute. *Clanton*, ¶ 13. This is so because this question is one of statutory interpretation. *Id.*

¶ 9 With this in mind, we turn to the parties' contentions.

### III. "Independent" Criminal Offense

¶ 10 Initially, the People contend that the more specific statute, section 26-2-305(1)(a), is not subject to the *Bagby* analysis because

it actually does not create a criminal offense "independent" of the general theft statute. We disagree. *Bagby* and its progeny only require that the statute be more "specific" than the general statute, and we conclude that section 26-2-305(1)(a) is a more "specific" statute separate from the general theft statute. *Smith*, 938 P.2d at 116; *People v. Warner*, 930 P.2d 564, 568 (Colo. 1996); *Bagby*, 734 P.2d at 1061.

¶ 11     The general theft statute, under which Rojas was prosecuted, reads, in pertinent part as follows:

> A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception; or receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen, and:
>     (a) Intends to deprive the other person permanently of the use or benefit of the thing of value;
>     (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; [or]
>     (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit . . . .

§ 18-4-401(1).

¶ 12      In contrast, the theft of food stamps by a fraudulent act

statute, section 26-2-305(1)(a), reads, in pertinent part, as follows:

> Any person who obtains, or any person who
> aids or abets another to obtain, food stamp
> coupons or authorization to purchase cards or
> an electronic benefits transfer card or similar
> credit card-type device through which food
> stamp benefits may be delivered to which the
> person is not entitled, or food stamp coupons
> or authorization to purchase cards or an
> electronic benefits transfer card or similar
> credit card-type device through which food
> stamp benefits may be delivered the value of
> which is greater than that to which the person
> is justly entitled by means of a willfully false
> statement or representation, or by
> impersonation, or by any other fraudulent
> device with intent to defeat the purposes of the
> food stamp program commits the crime of
> theft, which crime shall be classified in
> accordance with section 18-4-401(2), C.R.S.,
> and which crime shall be punished as provided
> in section 18-1.3-401, C.R.S., if the crime is
> classified as a felony, or section 18-1.3-501,
> C.R.S., if the crime is classified as a
> misdemeanor.

Section 26-2-305 then enumerates administrative penalties for

individuals who have committed the types of thefts described above.

*See* § 26-2-305(1)(a)-(e).

6

¶ 13    The People urge us to interpret section 26-2-305(1)(a) as simply reiterating that fraudulently obtaining food stamps is a theft under the general theft statute, and not as creating an "independent" criminal offense, because it "(1) defines such conduct as being the 'crime of theft'; (2) cross-references the theft statute as defining the classification and penalties of this 'crime of theft'; and (3) merely provides for additional administrative penalties for one who commits such thefts." We decline to do so.

¶ 14    The interpretation of section 26-2-305(1)(a) suggested by the People would render most, if not all, of the language of section 26-2-305(1)(a) quoted above superfluous. *See Welby Gardens v. Adams Cty. Bd. of Equalization*, 71 P.3d 992, 995 (Colo. 2003) ("In construing a statute, interpretations that render statutory provisions superfluous should be avoided."). Indeed, it would be unnecessary for the General Assembly simply to reiterate that fraudulently obtaining food stamps is a theft under the general theft statute considering that this activity is already a theft under the general theft statute. Likewise, it would be unnecessary for the

7

General Assembly simply to reiterate that crimes of theft under the general theft statute are classified under the general theft statute.

¶ 15    We conclude that a better interpretation of section 26-2-305(1)(a) is that it creates a more specific criminal offense of the theft of food stamps by a fraudulent act.  *See People v. Joyce*, 68 P.3d 521, 523 (Colo. App. 2002) ("The goal in interpreting any statute is to determine and give effect to the intent of the General Assembly by looking first to the language of the statute itself."). Indeed, this section includes a detailed description of the elements of a more specific criminal offense.  Under section 26-2-305(1)(a), a person "commits the crime of theft" under the food stamp program when that person

> (1) "obtains, or . . . aids or abets another to obtain";
>
> (2) "food stamp coupons or authorization to purchase cards or an electronic benefits transfer card or similar credit card-type device through which food stamp benefits may be delivered to which the person is not entitled, or food stamp coupons or authorization to purchase cards or an electronic benefits transfer card or similar credit card-type

device through which food stamp benefits may be delivered the value of which is greater than that to which the person is justly entitled";

(3) "by means of a willfully false statement or representation, or by impersonation, or by any other fraudulent device with intent to defeat the purposes of the food stamp program."

Section 26-2-305(1)(a) also gives specific directions for determining the classification of, and the penalty for, an offense under this section.

¶ 16    In interpreting section 26-2-305(1)(a) in this way, we note that this statute includes an additional penalty not included in the general theft statute, which suggests that the General Assembly intended to create a specific criminal offense separate from an offense under the general theft statute.  Section 26-2-305(1)(a) states that "[a]ny person violating the provisions of this subsection (1) is disqualified from participation in the food stamp program for one year for a first offense, two years for a second offense, and permanently for a third or subsequent offense."  This penalty

applies to the "offense" of "violating the provisions" of section 26-2-305(1)(a) and not to an offense under the general theft statute.

¶ 17     We also note that our interpretation of section 26-2-305 as creating a more specific criminal offense is supported by section 18-1-202, C.R.S. 2017.  This section gives a prosecutor authority to try a defendant for multiple crimes committed in different judicial districts in a single proceeding if the crimes "aris[e] from the same criminal episode." § 18-1-202(7)(a).  One criminal offense that may be considered part of the same criminal episode if committed more than once within a six-month period is "[f]raud in connection with obtaining food stamps" under section 26-2-305. § 18-1-202(7)(b)(II)(T).  This suggests that the General Assembly intended section 26-2-305(1)(a) to create a separate and more specific criminal offense.  *See Clanton,* ¶ 13.

¶ 18     And, although the dissent argues that "[n]either the title nor the text of [section 26-2-305] names a separate crime," we disagree. *Infra* ¶ 46.  The title of section 26-2-305 is "Fraudulent acts — penalties," specifying that the criminal offense outlined in this section involves fraudulent acts.  And, again, in section

10

18-1-202(7)(b)(II)(T), the General Assembly titled the criminal offense described in section 26-2-305 as "Fraud in connection with obtaining food stamps."

¶ 19　The dissent also suggests that section 26-2-305(1)(a) only exists to specify that a food stamp is "a thing of value" that belongs to "another" — that is, a government agency. *Infra* ¶ 49. But, we disagree for a number of reasons. First, we cannot discern why there would be a need to specify that a food stamp is "a thing of value" or that a government agency is "another" under the general theft statute. Second, section 26-2-305(1)(a) nowhere references subsection (1) of the general theft statute, which describes the elements of theft and includes the terms "thing of value" and "another." § 18-4-401. Instead, section 26-2-305(1)(a) only references subsection (2) of the general theft statute, which outlines the classification of offenses based on the value of the thing taken.

¶ 20　The dissent then relies on three cases for the proposition that defendants have "been convicted under the general theft statute for fraudulently obtaining food stamps." *Infra* ¶ 46. But, these three cases are inapplicable to Rojas's case. In *Valenzuela v. People*, 893

P.2d 97, 99 (Colo. 1995), the supreme court addressed whether interest could be charged in connection with restitution for the theft of food stamps and other public benefits, and there is no indication that the *Bagby* issue was raised in this case. Likewise, in *People v. Davalos*, 30 P.3d 841, 843-45 (Colo. App. 2001), a case involving theft of food stamps and other public benefits, the division addressed an evidentiary issue, prosecutorial misconduct, instructional issues, and restitution issues, but there is no indication that the *Bagby* issue was raised. And, in *People v. Witt*, 15 P.3d 1109, 1110 (Colo. App. 2000), the division addressed a restitution issue in connection with the theft of food stamps, but, again, there is no indication that the *Bagby* issue was raised in this case.

¶ 21    The dissent also relies on the legislative history of section 26-2-305(1)(a) in determining whether this section creates a separate criminal offense. But, for the reasons stated above, we conclude that it is clear that section 26-2-305(1)(a) creates a separate, more specific criminal offense; thus, we need not consider section 26-2-305(1)(a)'s legislative history. *See Dillard v. Indus.*

*Claim Appeals Office*, 121 P.3d 301, 303-04 (Colo. App. 2005) (The court may consider legislative history if "the meaning of a statute is unclear, ambiguous, or uncertain as to its intended scope."), *aff'd*, 134 P.3d 407 (Colo. 2006).

## IV.  *Bagby* Analysis

¶ 22    Having determined that section 26-2-305(1)(a) creates a separate, more specific criminal offense, we now consider the *Bagby* factors to determine whether the General Assembly intended section 26-2-305 to supplant the general theft statute.  We conclude that each *Bagby* factor suggests that the General Assembly intended section 26-2-305(1)(a) to supplant the general theft statute.

## A.  Full Police Powers

¶ 23    We first conclude that section 26-2-305 invokes the full extent of the state's police powers.  *See Smith*, 938 P.2d at 116.

¶ 24    In *Bagby*, our supreme court determined that the Liquor Code invoked the full extent of the state's police powers when the Liquor Code's legislative declaration stated that it was adopted as "an exercise of the police powers of the state for the protection of the

13

economic and social welfare and the health, peace and morals of the people of the state." 734 P.2d at 1062 (quoting § 12–47–102(1), C.R.S. 1985)); *see Clanton*, ¶ 14. The supreme court "viewed this 'broad' language as 'suggest[ing] that in adopting specific penal provisions in the Liquor Code, the General Assembly exercised the full police power of the state and considered the full range of possible sanctions in selecting those most appropriate for violations of the Liquor Code.'" *Clanton*, ¶ 14 (quoting *Bagby*, 734 P.2d at 1062).

¶ 25     And, in *Warner*, 930 P.2d at 568, the supreme court found that, like the Liquor Code, the Limited Gaming Act invoked the full extent of the state's police powers. In so doing, the supreme court cited to the Limited Gaming Act's legislative declaration, *id.*, which states that limited gaming establishments must "be licensed, controlled, and assisted to protect the public health, safety, good order, and the general welfare of the inhabitants of the state to foster the stability and success of limited gaming and to preserve the economy and policies of free competition of the state of Colorado," § 12-47.1-102(1)(c), C.R.S. 2017.

¶ 26    Section 26-2-305 is part of the Colorado Public Assistance Act, sections 26-2-101 to -1104, C.R.S. 2017.  The legislative declaration to the Public Assistance Act reads as follows:

> It is the purpose of this article to promote the public health and welfare of the people of Colorado by providing, in cooperation with the federal government or independently, public assistance for needy individuals and families who are residents of the state and whose income and property are insufficient to meet the costs of necessary maintenance and services as determined by the state department and to assist such individuals and families to attain or retain their capabilities for independence, self-care, and self-support, as contemplated by article XXIV of the state constitution and the provisions of the social security act and the food stamp act.  The state of Colorado and its various departments, agencies, and political subdivisions are authorized to promote and achieve these ends by any appropriate lawful means through cooperation with and utilization of available resources of the federal government and private individuals and organizations.

§ 26-2-102, C.R.S. 2017.

¶ 27    Sections 26-2-305 and 26-2-306, C.R.S. 2017, create several criminal offenses related to obtaining, using, transferring, and disposing of food stamps in ways not authorized by the Public Assistance Act.  These sections also include directions on how to

15

determine the classification of, and penalties for, such offenses. *See* §§ 26-2-305(1)(a), -306(2), C.R.S. 2017.

¶ 28     Section 26-2-305(4) contemplates district attorneys enforcing this section as follows:

> Additional costs incurred by district attorneys in enforcing this section, in accordance with the rules of the state department, shall be billed to county departments in the judicial district in the proportion to each county as specified in section 20-1-302, C.R.S., and the county departments shall pay such costs as an expense of food stamp administration.

¶ 29     We conclude that the Public Assistance Act's legislative declaration contains "broad" language, similar to that in *Warner*, that invokes the full extent of the state's police powers.  *See Warner*, 930 P.2d at 568; *Bagby*, 734 P.2d at 1062.  *But cf. Montante*, ¶¶ 16-17 (holding that the statute did not invoke full police powers where purpose of law was to create limited exceptions to criminal laws for providers and users of medical marijuana); *People v. Stansberry*, 83 P.3d 1188, 1190 (Colo. App. 2003) (holding that the purpose of the statute was merely to assess and collect motor vehicle taxes); *People v. Tow*, 992 P.2d 665, 667-68 (Colo. App. 1999) (holding that the purpose of the statute was merely to achieve uniformity among

16

traffic laws).  The legislative declaration states that the purpose of the Public Assistance Act is "to promote the public health and welfare of the people of Colorado by providing . . . public assistance for needy individuals and families who are residents of the state . . . ."  § 26-2-102.  Although this declaration does not explicitly mention "safety" and "order," it does authorize state agencies to achieve the goals of the Public Assistance Act "by any appropriate lawful means."  *Id.*  Also, considering that the Public Assistance Act creates several criminal offenses and contemplates district attorneys prosecuting these offenses suggests that the General Assembly intended to invoke the state's law enforcement powers to achieve the goals of the Public Assistance Act.  *See Bagby*, 734 P.2d at 1062; *Clanton*, ¶ 14.

¶ 30   Nevertheless, the People contend that the Public Assistance Act's legislative declaration "never invokes 'police powers' and this declaration never even mentions penalties, fines or addressing fraud in connection to these assistance programs."  We are not persuaded by this argument.  The legislative declaration in *Warner* did not explicitly refer to "police powers" either.  *See Warner*, 930

17

P.2d at 568.  And, although the legislative declaration to the Public Assistance Act does not mention "penalties, fines, or addressing fraud," nothing in *Bagby* or *Warner* suggests that the General Assembly must specifically mention these types of things in a legislative declaration to invoke the full extent of the state's police powers.  *See id.*; *Bagby*, 734 P.2d at 1062.  Also, the Public Assistance Act does mention these types of things in sections 26-2-305 and 26-2-306.

¶ 31     Citing *Clanton,* ¶ 17, the People also contend that the Public Assistance Act invokes the state's police powers only in a limited way.  We disagree.  The Public Assistance Act's legislative declaration includes language designed not to limit the state's power to achieve the goals of the Public Assistance Act.  Indeed, the legislative declaration authorizes state agencies to achieve the goals of the Public Assistance Act "by any appropriate lawful means." § 26-2-102.  This type of language was not present in the legislative declaration analyzed in *Clanton.  See Clanton,* ¶ 16.

B.  Comprehensive and Thorough Regulatory Scheme

¶ 32     We next conclude that section 26-2-305 is part of an act that

creates a comprehensive and thorough regulatory scheme to control

all aspects of Colorado's food stamp program.  *See Smith*, 938 P.2d

at 116.  The Public Assistance Act regulates all aspects of this food

stamp program by dictating which agency will administer the

program, outlining the process for applying for the program,

criminalizing violations of the program's rules, and providing for

numerous administrative and criminal penalties for violating the

program's rules.  *See* §§ 26-2-301 to -306; *see also Clanton*, ¶ 19

(holding that the Colorado Employment Security Act is a

comprehensive regulatory scheme under *Bagby*).

¶ 33     Nevertheless, citing *Montante*, ¶ 24, the People contend that

the Public Assistance Act "does not expressly criminalize all

improper conduct by recipients in such a way as to suggest a

comprehensive and thorough regulatory scheme."  We disagree.  In

*Montante*, the division concluded that medical marijuana

legislation, regulating the conduct of physicians with regard to

medical marijuana, was not a comprehensive and thorough

19

regulatory scheme because, while it provided comprehensive civil regulations, it did not "criminalize all improper conduct by physicians in connection with medical marijuana." ¶ 24. But, the Public Assistance Act does criminalize all improper conduct with regard to food stamps by criminalizing obtaining, using, transferring, and disposing of food stamps in ways not authorized by the Public Assistance Act. *See* §§ 26-2-305(1)(a), -305(2), -306(1).

### C. Multiple and Detailed Penalties

¶ 34 We also conclude that the Public Assistance Act carefully defines several different types of criminal offenses in detail. *See Smith*, 938 P.2d at 116.

¶ 35 As discussed above, section 26-2-305(1)(a) creates the crime of theft of food stamps by a fraudulent act, describing in detail the elements of this crime and giving directions as to how to determine the classification of and the penalty for the commission of this offense.

¶ 36 And, as noted, section 26-2-305(2) makes it a crime for a participant in the food stamp program not to report a change in

that participant's financial circumstances that affects that participant's eligibility for food stamps. Subsection (2) gives a detailed description of the elements of this offense, classifies the offense as a class 3 misdemeanor, and gives direction as to how to determine the penalty for the offense.

¶ 37    Section 26-2-306 of the Public Assistance Act creates the criminal offense of "trafficking in food stamps." In short, "trafficking in food stamps" involves knowingly obtaining, using, transferring, or disposing of food stamps in a way not authorized by the food stamp program. *See* § 26-2-306(1). But, section 26-2-306(1) gives very detailed descriptions of various ways that a person can commit the offense of "trafficking in food stamps." Section 26-2-306(2) provides specific standards for classifying an offense under the statute and includes classifications from a class 2 misdemeanor to a class 3 felony.

¶ 38    Given that each *Bagby* factor suggests that the General Assembly intended section 26-2-305 to supplant the general theft statute, we conclude that the prosecution was barred from prosecuting Rojas under the general theft statute. *See Smith*, 938

21

P.2d at 115; *Bagby*, 734 P.2d at 1061; *Montante*, ¶ 14; *Clanton*, ¶ 11. Accordingly, we vacate Rojas's convictions under the general theft statute.

## V. Remedy

¶ 39 Rojas contends that if we vacate her convictions under the general theft statute, section 18-1-408(2) and Crim. P. 8(a)(1) do not permit the prosecution to then charge her under section 26-2-305(1)(a). We do not address this issue because it is not properly before us. If the prosecution chooses to prosecute Rojas under section 26-2-305(1)(a), Rojas may raise this contention before the trial court.

## VII. Conclusion

¶ 40 Rojas' convictions under the general theft statute are vacated. In light of our holding, we need not address the parties' remaining contentions.

JUDGE TAUBMAN concurs.

JUDGE RICHMAN dissents.

JUDGE RICHMAN, dissenting.

¶ 41    I disagree with the majority's conclusion that section 26-2-305, C.R.S. 2017, precludes defendant's conviction under the general theft statute for two reasons.  First, in my view, section 26-2-305 does not create a criminal offense separate from the general theft statute, section 18-4-401, C.R.S. 2017.  Therefore, defendant's conviction under 18-4-401 should stand.  Second, even if section 26-2-305 creates a separate offense, it does not meet the *Bagby* factors suggesting that the statute supplanted the general theft statute.  *See People v. Bagby*, 734 P.2d 1059 (Colo. 1987).  Therefore, the prosecution acted within its discretion to proceed under the general theft statute.  *See People v. Clanton*, 2015 COA 8, ¶ 10 ("It is up to the prosecutor to determine which crimes to charge when a person's conduct arguably violates more than one statute.").

¶ 42    I also discuss two issues that the majority did not reach: (1) the propriety of the prosecution's choice to aggregate the thefts into one class 4 felony and one class 6 felony and (2) an evidentiary issue.

## I. Separate Offense

¶ 43     I reach my first conclusion by a plain reading of the language of the statute. *See People v. Joyce*, 68 P.3d 521, 523 (Colo. App. 2002) ("The goal in interpreting any statute is to determine and give effect to the intent of the General Assembly by looking first to the language of the statute itself.").

¶ 44     Section 26-2-305(1)(a) provides several methods by which a person may commit the offense of obtaining food stamps by a fraudulent act. A person may violate the statute by "means of a willfully false statement or representation," "impersonation," or "any other fraudulent device with intent to defeat the purposes of the food stamp program." § 26-2-305(1)(a).[1]

¶ 45     As the statute plainly states, any person who obtains food stamps by means of one of those fraudulent acts "commits the crime of theft." *Id.* The statute further provides that the crime is

---

[1] Under this reading, the intent requirement of "intent to defeat the purposes of the food stamp program" attaches only to the use of a fraudulent device. § 26-2-305, C.R.S. 2017. The intent requirement in a case involving fraudulently obtaining food stamps by means of a "willfully false statement or representation" or by "impersonation," *id.*, is the intent requirement under section 18-4-401, C.R.S. 2017.

classified as a felony or a misdemeanor in accordance with the general theft statute and depends on the value of the food stamps obtained. If the crime is a felony, punishment is determined under section 18-1.3-401, C.R.S. 2017, and if a misdemeanor, under section 18-1.3-501, C.R.S. 2017.

¶ 46 Neither the title nor the text of the statute names a separate crime. To me, any offender reading the statute would be informed that the offense committed would be theft and that the subject punishment would be based on the theft statutes; any prosecutor reading the statute would know to charge the offense as theft. Historically, defendants have been convicted under the general theft statute for fraudulently obtaining food stamps, just as defendant was here. *See Valenzuela v. People*, 893 P.2d 97 (Colo. 1995); *People v. Davalos*, 30 P.3d 841 (Colo. App. 2001); *People v. Witt*, 15 P.3d 1109 (Colo. App. 2000).

¶ 47 Moreover, if we look beyond the statutory language, the legislative history evinces a clear intent to charge fraudulent acquisition of food stamps under the general theft statute. The General Assembly added the pertinent words to section 26-2-305 in 1989, as part of "An Act Concerning Criminal Offenses, and

25

Relating to the Classification Thereof," changing the relevant language from

> [any person who fraudulently obtains food stamp benefits] shall be punished as follows: If such coupons or authorization to purchase cards are of a value of five hundred dollars or more, such person commits a class 5 felony and shall be punished as provided in section 18-1-105, C.R.S. 1973; or, if such coupons or authorization to purchase cards are of the value of less than five hundred dollars, he commits a class 3 misdemeanor and shall be punished as provided in section 18-1-106, C.R.S. 1973,

to

> [any person who fraudulently obtains food stamp benefits] *commits the crime of theft,* which crime shall be classified in accordance with section 18-4-401(2), C.R.S., and which crime shall be punished as provided in section 18-1-105, C.R.S., if the crime is classified as a felony, or section 18-1-106, C.R.S., if the crime is classified as a misdemeanor.

Ch. 148, sec. 119, § 26-2-305, 1989 Colo. Sess. Laws 820, 846-47 (emphasis added).[2]  The former version plainly described a separate crime under this statute; the revision rendered the crime as theft.

---

[2] In the same bill, the General Assembly substituted identical language into section 26-1-127, regarding fraudulent acts to obtain

¶ 48    As noted above, case law reveals that defendants obtaining

food stamps by fraudulent means have been prosecuted under the

general theft statute since the 1989 amendment.  And the

legislature left the pertinent language regarding the "crime of theft"

intact, despite having amended section 26-2-305 three additional

times since 1989.[3]  *See Tompkins v. DeLeon*, 197 Colo. 569, 571,

595 P.2d 242, 243-44 (1979) (holding that where the legislature

amends a statute and does not change a section previously

interpreted by settled construction, it is presumed that the

legislature agrees with the judicial construction).

¶ 49    I disagree with the majority that the language of section

26-2-305(1)(a) is rendered superfluous if the offense is prosecuted

as a theft.  The theft statute provides that an offense is committed

when a person obtains anything of value of another without

authorization.  By incorporating the theft statute, the effect of

---

"public assistance or vendor payments or medical assistance."  Ch.
148, sec. 118, § 26-1-127, 1989 Colo. Sess. Laws 846.
[3] After the 1989 amendment, the legislature subsequently amended
section 26-2-305 in 1994, 1997, and 2002.  Ch. 330, sec. 7, § 26-2-
305, 1994 Colo. Sess. Laws 2065; Ch. 234, sec. 27, § 26-2-305,
1997 Colo. Sess. Laws 1235-36; Ch. 318, sec. 273, § 26-2-305,
2002 Colo. Sess. Laws 1539.

section 26-2-305(1)(a) is to specify that food stamps are a thing of value, akin to dollars, and that although obtained from a government agency that issues but does not "own" the food stamps, the agency nonetheless has a proprietary interest in the food stamps, as provided in 18-4-401(1.5).

¶ 50    I also depart from the majority because if section 26-2-305(1)(a) is a separate offense, it is unclear what the punishment or penalty would be. The majority suggests that the General Assembly intended to create a specific criminal offense by including "an additional penalty" (disqualification from participating in the food stamp program). *Supra* ¶ 16. But that additional penalty is administrative, not criminal, and as the majority acknowledges, the administrative penalty is not the only penalty for violation of the statute. The only other specified penalties are the penalties under the theft statutes. If the General Assembly did not intend for violations of section 26-2-305(1)(a) to be prosecuted as theft, there would be no reason to import the penalties from the theft statute. Conversely, if the General Assembly did intend section 26-2-305(1)(a) to be a separate criminal offense, it would have included separate penalties. The additional administrative

28

penalty also shows that section 26-2-305(1)(a) is not superfluous to the theft statute as it provides for a penalty separate from the criminal penalties of the theft statute.

## II. *Bagby* Analysis

¶ 51     If the same conduct is described as criminal in different statutes, the offender may be prosecuted under any or all of the sections.  § 18-1-408(7), C.R.S. 2017.  However, a more specific statute precludes prosecution under a more general statute only when "legislative intent is shown to limit prosecution to the [specific] statute."  *Bagby*, 734 P.2d at 1061.  Such legislative intent may be demonstrated by the *Bagby* factors described in the majority opinion.  But unless the General Assembly's intent to supplant the more general offense is clear, an offender may be prosecuted under the general statute.  *Clanton*, ¶ 11; *see People v. Smith*, 938 P.2d 111, 115 (Colo. 1997).  I do not perceive any clear indicia of the General Assembly's intent to supplant the general theft statute.

¶ 52     *Bagby* requires that the full extent of the state's police powers be invoked by the more specific act.  In my view, section 26-2-305 does not invoke the full extent of the state's police powers to

prevent food stamp fraud because it does not purport to invoke any of the state's police powers.

¶ 53    In *Bagby*, the supreme court concluded that the Liquor Code invoked the full extent of the state's police powers because the legislative declaration expressly stated the law was passed in exercise of the police powers of the state. 734 P.2d at 1062. In *People v. Warner*, 930 P.2d 564, 567-68 (Colo. 1996), the supreme court concluded that the Limited Gaming Act invoked the full extent of the state's police powers because coincident to its enactment, the General Assembly codified the offenses defined in the act in article 20 of the Criminal Code, and the legislative declaration in section 18-20-101, C.R.S. 2017, invoked the need for "the immediate and future preservation of the public peace, health, and safety." In *Clanton*, a division of our court declined to conclude that the defendant could not be prosecuted under a general forgery statute, noting that while the Employment Security Act states that it was enacted "under the police powers of the state," the invocation was "more limited" than the statutes at issue in *Bagby* and *Warner*. *Clanton*, ¶¶ 16-17.

¶ 54    In support of its conclusion that section 26-2-305 invokes the full extent of the state's police power with respect to food stamp fraud, the majority cites to the legislative declaration attached to the Public Assistance Act. *See* § 26-2-102, C.R.S. 2017. That legislative declaration is not specifically attached to the provisions prohibiting food stamp fraud, but even to the extent it can be read in conjunction with section 26-2-305, it does not contain any language regarding the police powers or the public peace and safety. Rather, it refers to the promotion of public assistance programs for the welfare of the people in cooperation with the federal government. To the extent the statute can be read as making any reference to the exercise of police powers, it does not provide for the exercise of the "full extent" of such powers.

¶ 55    Because I conclude that the first *Bagby* factor is not met by the provisions of section 26-2-305, I do not address the other two factors.

## III. Other Issues

### A. Effect of 2013 Amendments to Theft Statute

¶ 56    On appeal, defendant argued two issues that the majority does not reach. Because I would affirm defendant's convictions but

change the classification of one conviction, I briefly address defendant's two additional arguments.

¶ 57     On June 5, 2013, the General Assembly amended the theft statute to provide that a theft of at least $2000 or more but less than $5000 was classified as a class 6 felony, and a theft of $5000 or more but less than $20,000 was classified as a class 5 felony. Ch. 373, sec. 1, § 18-4-401, 2013 Colo. Sess. Laws 2196.  Some of the alleged acts of theft by defendant took place before June 5, 2013; others took place after June 5, 2013.

¶ 58     In an apparent recognition of the statutory amendment, the prosecutor ultimately charged defendant with one count relating to the alleged thefts that occurred before June 5, 2013, and charged those as a class 4 felony under the provisions of the former statute, and with a second count relating to the alleged thefts that occurred after June 5, 2013, and charged those as a class 6 felony under the amended statute.

¶ 59     Defendant asserts that the prosecution aggregated the amounts at issue before June 5, 2013, so that defendant was accused of stealing $3528 during that period (which under the former theft statute would be a class 4 felony) and aggregated the

amounts at issue after July 5, 2013, so that defendant was accused of stealing more than $2000 during this period (a class 6 felony under the amended theft statute).

¶ 60     The jury was instructed on, and defendant was convicted of, two separate counts of theft: a class 4 felony for the thefts occurring before June 5, 2013, and a class 6 felony for the thefts occurring after June 5, 2013.  The trial court sentenced defendant to a concurrent sentence of three years of probation on each count.

¶ 61     Defendant first contends that the prosecution was required to aggregate the total amount of the thefts into one count because they occurred within a six-month period.  Defendant further contends that the classifications under the amended theft statute should be applied, and therefore had the amounts been aggregated and defendant charged in one count and convicted, it would have resulted in one conviction for a class 5 felony.

¶ 62     I agree with defendant's contention that the classifications under the amended theft statute should apply to her convictions.  I disagree with her remaining contentions.

¶ 63     Defendant was charged under 18-4-401(4)(a) for committing theft twice or more within a period of six months.  That statute and

case law permit, but do not require, the prosecution to aggregate the thefts and charge them in a single count. Because aggregation was not mandatory, the prosecution was not required to aggregate defendant's thefts into one count.

¶ 64    Defendant was convicted and sentenced after the June 2013 amendments to the theft statute. In *People v. Stellabotte*, 2016 COA 106, ¶ 45 (*cert. granted* Feb. 6, 2017), a division of this court concluded that a defendant who committed thefts prior to the 2013 amendment was entitled to benefit from the amendment at sentencing insofar as it reduced the classification of the offenses. I agree with the reasoning of *Stellabotte*. Thus, defendant's conviction for acts occurring before the June 5, 2013, amendment should be reduced to a class 6 felony.

## B. Evidentiary Issue

¶ 65    On appeal, Rojas also contends that the trial court abused its discretion by admitting as res gestae evidence that she lied about her employment income on an August 9, 2013 reapplication for food stamps. Because the application provided evidence of defendant's mental state and demonstrated that she had knowingly received a thing of value of another by deception, it was "part and parcel" of

the crime charged.  *Callis v. People*, 692 P.2d 1045, 1051 n.9 (Colo. 1984).  Accordingly, I perceive no abuse of discretion by the trial court.

## IV. Conclusion

¶ 66     I respectfully dissent from the majority's opinion.  Because I perceive no error in the admission of evidence or in prosecuting defendant under the general theft statute, I would affirm the convictions and remand for a correction of the mittimus to reflect two class 6 felony convictions.